<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEPHEN M.,[1] | |
| Plaintiff, | No. 25cv02736 (EP) |
| v. | **MEMORANDUM ORDER** |
| FRANK BISIGNANO,[2] COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**PADIN, District Judge.**

Plaintiff Stephen M., who suffers from multiple physical impairments, appeals the Social Security Administration's ("SSA") denial of disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* (the "Act"). D.E. 1 ("Complaint"). For the reasons explained below, the Court will **GRANT** the appeal, **VACATE** the denial, and **REMAND** for further proceedings consistent with this Opinion.[3]

---

[1] To protect the privacy interests of plaintiffs in social security cases, the Court adopts the recommendation of the Judicial Conference of the United States to refer to plaintiffs in social security cases by their first name and last initial. *Veronica D. v. Comm'r of Soc. Sec.*, No. 24-1326, 2025 WL 2665313, at *8 (M.D. Pa. Sept. 17, 2025).

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as the Defendant here pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[3] The Court decides the appeal without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

## I.   BACKGROUND

### A.   Plaintiff's DIB & SSI Applications

Plaintiff initially filed protective DIB and SSI applications on November 9, 2016, alleging disability beginning on July 15, 2016.  *See* D.E. 4 ("Administrative Record" or "R.") at 188-92 & 193-99.  The SSA denied the applications on February 7, 2017, *id.* at 62-83, and again upon reconsideration on June 7, 2017, *id.* at 84-117 & 121-28.  Administrative Law Judge Peter R. Lee (the "ALJ")[4] conducted a hearing on Plaintiff's applications on February 19, 2019 (the "First Hearing"), *id.* at 31-61.  After the First Hearing, on April 9, 2019, the ALJ denied both of Plaintiff's applications.  *Id.* at 11-30.

Plaintiff then filed an appeal to the Appeals Council on April 11, 2019.  *Id.* at 183-87.  On March 25, 2020, the Appeals Council denied the request for review.  *Id.* at 1-6.  Plaintiff then filed a complaint in this District, and District Judge Stanley Chesler vacated and remanded the decision for further consideration on September 27, 2021.  *Id.* at 729-37.  The Appeals Council ordered the ALJ to consolidate Plaintiff's subsequent claims for disability benefits made on June 1, 2021, and June 10, 2021.  *Id.* at 739-44.  Then on July 10, 2023, the ALJ held a supplemental hearing (the "Second Hearing").  *Id.* at 655-700.  On October 31, 2023, the ALJ found that Plaintiff was not disabled and again denied both of Plaintiff's applications.  *Id.* at 627-54.

### B.   The ALJ's Five-Step Sequential Evaluation Process

To qualify for DIB or SSI, a claimant must show that he is disabled[5] within the meaning of the Act.  42 U.S.C. § 423(a)(1)(E).  Disability is the inability "to engage in any substantial

---

[4] Peter R. Lee served as the ALJ for all proceedings in this case, including both hearings and both decisions.

[5] The standard for determining a claimant's disability is the same for both DIB and SSI.  *See Benton v. Comm'r of Soc. Sec.*, No. 18-9478, 2019 WL 2285490, at *1 n.3 (D.N.J. May 29, 2019) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 n.1 (3d Cir. 2005)) (describing how the law and

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *Id.* § 423(d)(1)(A); *see Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citation omitted).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

Here, the ALJ found that Plaintiff had engaged in substantial gainful activity in the third and fourth quarters of 2021 and in the first quarter of 2022. R. at 633. The ALJ, however, found that despite those three quarters, Plaintiff had "a continuous 12-month period" where he did not engage in such activity and subsequently addressed those periods. *Id.*[6]

---

regulations which determine disability are the same for DIB and SSI claims). Accordingly, the Court will only cite to the DIB regulations.

[6] The ALJ does not specify the "12-month period during which [Plaintiff] did not engage in substantial gainful activity." *Id.*

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  The ALJ otherwise proceeds to step three.

Here, the ALJ determined that Plaintiff has three severe medical impairments: (1) bipolar disorder; (2) anxiety disorder; and (3) substance abuse disorder.  R. at 633.  The ALJ also determined that Plaintiff had three non-severe medical impairments: (1) left hip pain; (2) hyperlipidemia; and (3) hypothyroidism.  *Id.* at 633-34.

At step three, the ALJ decides whether the plaintiff's impairments meet or equal the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. pt. 404, subpt. P, app. 1.[7]  20 C.F.R. § 404.1520(d).  If so, then the plaintiff is presumed to be disabled if the impairments have lasted or are expected to last for a continuous period of at least twelve months.  *Id.* § 404.1509.  The ALJ otherwise proceeds to step four.

Despite recognizing at step two that Plaintiff had multiple severe impairments and several non-severe impairments, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listings.  R. at 634-36.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and whether the plaintiff can perform past relevant work.[8]  20 C.F.R. §§ 404.1520(e), (f),

---

[7] A "Listing" refers to an impairment on the Listing of Impairments.

[8] Past relevant work is defined as "work performed (either as claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established."  R. at 632.

4

416.920(e), (f).  If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled.  The ALJ otherwise proceeds to step five.

Here, the ALJ found that Plaintiff had the RFC to:

> [P]erform medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c) except occasional contact with supervisors, co-workers and the public; work must be performed in an environment free of fast paced production requirements where productivity is measured at the end of the day and with only occasional changes to essential job functions; able to do only simple and routine tasks.

R. at 636; *see id.* at 636-42 (full explanation of the ALJ's decision).  The ALJ also found that Plaintiff could perform past relevant work as an Order Picker (DOT 922.687-058), a medium, SVP-2 occupation.  *Id.* at 642.

Finally, at step five, the ALJ must decide whether the plaintiff—considering the plaintiff's RFC, age, education, and work experience—can perform other jobs in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).

Here, the ALJ determined that Plaintiff could perform at least three jobs:  (1) industrial cleaner (DOT 381.687-018), a medium, SVP-2 unskilled occupation with 125,000 jobs nationally; (2) laundry worker I (DOT 361.684-014), a medium, SVP-2 unskilled occupation with 40,000 jobs nationally; and (3) hospital food service worker (DOT 319.677-014), a medium, SVP-2 unskilled occupation with 95,000 jobs in the nation.  R. at 644.

### C. Plaintiff's Appeal

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on February 18, 2025, because Plaintiff failed to file exceptions within 30 days of receiving the decision.  R. at 605-07.  Plaintiff then commenced this action on April 15, 2025.  Complaint. Defendant filed the Administrative Record on June 17, 2025.  *See* R.

On August 5, 2025, Plaintiff filed his brief.  D.E. 7 ("Brief" or "Br.").  Defendant opposed, D.E. 9 ("Opposition" or "Opp'n"), and Plaintiff replied, D.E. 10 ("Reply").

## II.    LEGAL STANDARD

Judicial review of an SSA determination is based on the pleadings and the transcript of the record.  The scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the ALJ's findings of fact.  *See* 42 U.S.C. § 405(g) ("The findings . . . as to any fact, *if supported by substantial evidence*, shall be conclusive.") (emphasis added); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (holding that a district court has plenary review of all legal issues and reviews the ALJ's findings to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

"Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Fargnoli*, 247 F.3d at 43 (citation omitted).  The Court must determine "whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision." *Dunster v. Dudek*, No. 24-469, 2025 WL 622333, at *4 (M.D. Pa. Feb. 26, 2025) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).  An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Decisions with conclusory findings or which indicate

6

the ALJ failed to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. And the Court must also ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

## III.   DISCUSSION

Plaintiff's appeal rests on three arguments: (1) the ALJ improperly evaluated the medical evidence; (2) the ALJ erred in finding the Plaintiff can perform his past relevant work; and (3) the ALJ failed to assess the vocational expert's testimony properly. Br. at 24, 20. Plaintiff contends the ALJ's evaluation mischaracterized the Plaintiff's relationship with his mother, *id.* at 26-27, and ignored how Plaintiff's severe impairment of bipolar disorder "manifests itself in mood swings," *id.* at 28. Based on these alleged errors, Plaintiff asks the Court to reverse the ALJ's decision and remand solely to grant Plaintiff his "rightful benefits," or alternatively, to remand to a "new Administrative Law Judge for a complete and thorough review of the medical evidence." *Id.* at 35.

For the reasons below, the Court agrees with Plaintiff that the ALJ failed to discuss Plaintiff's mood swings and mischaracterized Plaintiff's relationship with his mother at step three, but Plaintiff has failed to meet the burden required to warrant a remand on the issue. The Court nevertheless finds that the ALJ also erred at step four by failing to articulate whether or how the ALJ considered Plaintiff's non-severe medical impairments of hyperlipidemia and hypothyroidism, and by failing to analyze the full scope of Plaintiff's mental impairment and the side effects of his medications, when crafting Plaintiff's RFC. Therefore, the Court will **GRANT** Plaintiff's appeal and **VACATE** the denial. The Court, however, disagrees with Plaintiff that a reversal solely for the calculation of benefits is appropriate, and will therefore **REMAND** for

further proceedings consistent with this Opinion and **DENY** Plaintiff's request to assign a new ALJ.

### A. Plaintiff Fails to Demonstrate that the ALJ Committed a Reversible Error at Step Three

At step three, the ALJ must determine whether any of the Plaintiff's impairments or combination of impairments "meets or equals" the severity of an impairment in the Listing in 20 C.F.R. pt. 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(d). Plaintiff, however, still "bears the burden to demonstrate harm." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (finding Plaintiff's failure to show harm provided no basis for the court to remand). The Court agrees with Plaintiff that the ALJ failed to properly consider significant symptoms of Plaintiff's severe bipolar disorder and mischaracterized Plaintiff's relationship with his mother. Notwithstanding, Plaintiff fatally fails to plead why or how the outcome would have been different had the ALJ properly considered Plaintiff's bipolar symptoms and accurately characterized Plaintiff's relationship with his mother. Plaintiff does not meet his burden. The Court finds no reversible error at step three.

The ALJ evaluated whether Plaintiff's mental impairments meet the criteria of Listings 12.04 and 12.06 by reviewing "paragraph B" criteria. For paragraph B, a plaintiff's mental impairments must result in at least one "extreme" limitation or two "marked" limitations in the four broad areas of functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. An extreme limitation is the "inability to function independently, appropriately, or effectively, and on a sustained basis." R. at 634. A marked limitation is a "seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." *Id*.

Here, the ALJ found the Plaintiff had only a moderate limitation in all four broad areas of functioning. *Id.* at 634-35. Plaintiff argues that the ALJ improperly evaluated medical testimony to reach those conclusions. Br. at 26-28. More specifically, the ALJ failed to consider the mood swings associated with Plaintiff's severe impairment of bipolar disorder and mischaracterized Plaintiff's relationship with his mother. *Id.* The Court agrees with Plaintiff.

The ALJ explained that Plaintiff "exhibited [the] appropriate mood and affect on multiple occasions," when justifying his moderate limitation in the functional area of adapting and managing himself. R. at 635. Plaintiff contends, however, that throughout his analysis, the ALJ "did not understand the mood swings exhibited by someone suffering from bipolar disorder" and "fail[ed] to consider [Plaintiff's mood swings] in making his findings." Br. at 27-28.

Mood swings are a well-known side effect "consistent with bipolar affective disorder." *Gonzalez v. Berryhill*, 340 F. Supp. 3d 424, 433 (E.D. Pa. 2018). The ALJ here, however, decided not to address a critical "countervailing" medical symptom associated with one of Plaintiff's severe impairments. *See Morales*, 225 F.3d at 317. As in *Gonzalez*, the ALJ "did not consider . . . the swings and/or dips in Plaintiff's mood." 340 F. Supp. 3d at 433. The failure to do so is critical. *Compare id.* (reversing where ALJ failed to address mood swings), *with Jacklyn C. v. Comm'r of Soc. Sec.*, No. 20-1256, 2022 WL 17977059, at *8 (D.N.J. Dec. 28, 2022) (affirming where ALJ expressly addressed mood swings).

The ALJ also conducted functional area analyses and failed to discuss Plaintiff's bipolar disorder for those analyses. R. at 634-35. The Court agrees with Plaintiff that the ALJ failed to address this significant symptom of his severe bipolar disorder.

Plaintiff's additional argument claiming the ALJ mischaracterized Plaintiff's relationship with his mother also has merit. The ALJ found Plaintiff was "nurturing" when living with his

9

mother, as he "gave her medication and prepared dinner for her." R. at 635. While this statement accurately cites the Record, it still fails to address the countervailing evidence that Plaintiff's "brother and one sister care for their mother with little support from [P]laintiff." Br. at 27; *see* R. at 688. The ALJ decided not to conduct a more thorough analysis of Plaintiff's isolated interactions with his mother. Instead, the ALJ described Plaintiff's relationship with his mother solely in a positive light while disregarding other family members who seem to be more responsible for her care.

Even though the ALJ failed to address countervailing evidence in two different functional areas during step three, Plaintiff's Brief "presents no proof that any additional evidence or discussion [of his mood swings or an accurate description of his relationship with his mother] would lead to a contrary finding." *Jones v. Astrue*, No. 11-4379, 2012 WL 5451528, at *4 (D.N.J. Nov. 5, 2012). Without that showing—which is Plaintiff's burden—the Court cannot remand based on the incomplete step three argument. Therefore, the Court proceeds to step four.

**B.    The ALJ Erred at Step Four**

Plaintiff did not argue that the ALJ failed to analyze non-severe impairments at step four. The Court nonetheless finds the ALJ erred at that step. The Court's authority to reach beyond the issues the parties chose to brief derives from the statute and from the character of the error itself. Section 405(g) of the Act charges this Court with determining whether the Commissioner's findings of fact are "supported by substantial evidence." 42 U.S.C. § 405(g). Because the Appeals Council denied Plaintiff's request for review, the ALJ's decision constitutes the Commissioner's final decision, *see* 20 C.F.R. § 404.981, and it is therefore the ALJ's findings that the Court evaluates under that mandate. That charge is not limited to the issues the parties elected to brief; it is a mandate to examine whether the administrative record, as a whole, contains substantial evidence to support the ALJ's findings of fact. *See Schaudeck,* 181 F.3d at 431.

10

At step four, "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits" because Social Security proceedings are "inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (plurality opinion). So, when the ALJ has conducted no analysis of a regulatory requirement, that omission forecloses meaningful substantial evidence review. *See Cotter*, 642 F.2d at 704–05. Reviewing an issue the parties did not raise is thus not a departure from the structure of Social Security cases—it is precisely what the structure contemplates. *See Bryan P. v. Comm'r of Soc. Sec.*, No. 22-5496, 2023 WL 7151223, at \*6 (D.N.J. Oct. 31, 2023) (collecting cases where courts rely on "*Sims* to allow for *sua sponte* review of issues not raised by the parties" in Social Security cases).

As the Court does here, courts have remanded Social Security actions where they found the ALJ erred at step four even though the plaintiff did not raise a step four issue. *See, e.g.*, *Womack v. Astrue*, No. 07-167, 2008 WL 2486524, at \*5 (W.D. Okla. June 19, 2008) ("[T]he ALJ's findings at step four of the sequential evaluation are not supported by substantial evidence [and] . . . [a]lthough Plaintiff did not raise this issue, the Court addresses it *sua sponte*."); *Wilting v. Astrue*, No. 09-1207, 2010 WL 3023387, at \*7 (D. Colo. July 29, 2010) ("Finally, although not raised by Plaintiff[,] I find I must address *sua sponte* two other issues from my review of the record that should be assessed on remand"). And courts have remanded a Social Security action because "the failure by [p]laintiff or her counsel to raise an error is not an acceptable reason for a court to actively ignore it," and "the court can, and should, raise and address [such] issues *sua sponte* because the court has an independent duty to determine whether the ALJ's findings (in every regard) are supported by substantial evidence—and to take any consequentially necessary actions." *Denise L.T. v. Soc. Sec. Comm'r*, No. 21-902, 2022 WL 4591784, at \*3 n.3 (N.D. Cal. Sept. 29, 2022) (citing *Sims*, 530 U.S. at 110).

The Commissioner argues that any argument Plaintiff failed to develop is forfeited. *See* Opp'n at 3 n.3 (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009)). In traditional adversarial litigation, that principle is well established. But Social Security litigation is not traditional litigation. *See Sims*, 530 U.S. at 112 (explaining how traditional litigation involved the "adversarial development of issues by the parties," whereas in Social Security litigation the "Council, not the claimant, has the primary responsibility for identifying and developing issues"). Illustratively, *Sims* explained that a claimant who has exhausted his administrative remedies "need not also exhaust issues" before the Appeals Council to preserve them for judicial review. *Id. Conroy*, which the Commissioner relies on, comes from ordinary litigation, so it is distinguishable. 316 F. App'x at 144 n.5. The Court may therefore examine the ALJ's RFC analysis as a whole— including the parts of it the parties do not bring up or contest.

The Court has reviewed the ALJ's step four findings to determine whether they are supported by substantial evidence. They are not. At step four, the ALJ must craft Plaintiff's RFC. Under 20 C.F.R. § 416.945(a)(2), the ALJ must "consider all" of the claimant's impairments, including those "that are not 'severe.'" *K.P. v. Comm'r of Soc. Sec.*, No. 20-2831, 2021 WL 3130879, at *4 (D.N.J. July 23, 2021). Social Security Ruling 96-8p explains:

> [w]hile[]"non severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5.

Put simply, "even if the ALJ properly determines that a claimant's impairments are non-severe [at step two] . . . a finding of non-severity does not eliminate those impairments from

consideration of his or her overall ability to perform past work." *Scott S. v. Comm'r of Soc. Sec.*, No. 21-12732, 2024 WL 3665803, at *4-5 (D.N.J. Aug. 6, 2024) (quoting *Marsella v. Comm'r of Soc. Sec.*, No. 18-2294, 2019 WL 912141, at *9 (D.N.J. Feb. 25, 2019)).

As noted above, the ALJ determined that Plaintiff had three severe impairments: (1) bipolar disorder; (2) anxiety disorder; and (3) substance abuse disorder. R. at 633. And three non-severe impairments: (1) left hip pain; (2) hyperlipidemia; and (3) hypothyroidism. *Id.* at 633-34. In finding the latter two non-severe impairments at step two, the ALJ referred to hyperlipidemia and hypothyroidism as "medically determinable impairments" and found that both "no more than minimally limit[ed] the claimant's ability to perform basic work activity." *Id.* at 634. At step four, however, the ALJ's analysis was silent as to hyperlipidemia or hypothyroidism. *Id.* The ALJ failed to explicitly discuss either non-severe impairment in his analysis; he *did*, however, discuss Plaintiff's left hip pain—the third non-severe impairment. *Id.*

Courts in this District have defined non-severe impairments as impairments that "would have no more than a minimal effect on an individual's ability to do work." *Strzalka v. Comm'r of Soc. Sec.*, No. 14-00645, 2015 WL 668275, at *5 (D.N.J. Feb. 13, 2015). At step two, the ALJ explicitly differentiated hyperlipidemia and hypothyroidism from severe impairments because severe impairments "significantly limit the ability to perform basic work activities." R. at 633-34. The ALJ's language demonstrates that hyperlipidemia and hypothyroidism are two medically determinable impairments which must be properly characterized as not severe for his analysis.

After recognizing these non-severe impairments in step two, the ALJ made the following statement about their impact on Plaintiff's RFC:

> I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

13

*Id.* at 634.

The Court disagrees. "Although an ALJ is not required 'to use particular language or adhere to a particular format in conducting [the] analysis,' the decision must contain 'sufficient development of the record and explanation of findings to permit meaningful review.'" *Lauren R. v. Kijakazi*, No. 20-15611, 2023 WL 3884120, at *2 (D.N.J. June 8, 2023) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

The ALJ failed to explain or discuss how Plaintiff's non-severe impairments of hyperlipidemia and hypothyroidism affect the RFC determination (if at all). Effectively two of Plaintiff's non-severe impairments were "screened out of the analysis at step two. As a result, the potential effect of those impairments, alone or in combination with each other and the [other] impairments, was not analyzed at [step four]." *Melendez v. Colvin*, No. 15-3209, 2016 WL 4718946, at *4 (D.N.J. Sept. 8, 2016).

In *Curry v. Comm'r of Soc. Sec.*, a court in this District faced a nearly identical situation. No. 15-7515, 2017 WL 825196, at *5 (D.N.J. Mar. 2, 2017). There, the ALJ—when determining the plaintiff's RFC at step four—failed to consider the non-severe medical impairments previously found at step two. *Id.* Finding the ALJ's analysis of non-severe impairments insufficient, the court explained:

> Although the ALJ stated at step four that she considered "all symptoms," nowhere in the ALJ's RFC assessment does she specifically consider or address the impact of Plaintiff's mental impairments on her ability to work as an administrative assistant. In the step two analysis, the ALJ noted that Plaintiff suffered from mild to moderate mental impairments. Even though those mental impairments were not considered "severe," mild and moderate mental impairments *presumably have an impact on Plaintiff's overall RFC.* The impact may be de minimis, or only require minor modifications of Plaintiff's RFC, with the end result being that Plaintiff is still capable of performing work at the light exertional level. *The Court and Plaintiff, however, are left to guess if that would truly be the result.*

*Id.* (emphasis added) (citation modified).

14

As in *Curry,* the ALJ here failed to articulate any explanation of how two of Plaintiff's non-severe impairments affect his RFC. Put simply, it is unclear whether or how Plaintiff's hyperlipidemia and hypothyroidism affect his ability to perform medium work (if at all).

"In evaluating all the evidence before them, including evidence on non-severe impairments, an ALJ may weigh the credibility of the evidence, but they must give some indication of the evidence they reject and the reason(s) for discounting such evidence." *Lucas v. Bisignano*, No. 25-344, 2026 WL 560360, at *4 (M.D. Pa. Feb. 27, 2026). Despite the ALJ's statement that he considered Plaintiff's non-severe impairments when crafting his RFC, the Record suggests otherwise.

Still, "[t]he Court cannot weigh the evidence or substitute its conclusions for those of the ALJ . . . [and] [w]ithout the ALJ performing that analysis, this Court cannot determine whether the ALJ's decision is supported by substantial evidence." *Fitzpatrick v. Comm'r of Soc. Sec.*, No. 19-07608, 2020 WL 1872978, at *6 (D.N.J. Apr. 15, 2020). Accordingly, the Court must remand for "further proceedings so that the ALJ may properly consider how Plaintiff's [non-severe] impairments affect [his] RFC and [his] capability to perform past relevant work." *Id.*; *see Brandt v. Kijakazi*, No. 22-197, 2023 WL 2578253, at *5-6 (M.D. Pa. Mar. 20, 2023) (reversing and remanding the ALJ's decision because, unlike the ALJ's indication that all of the plaintiff's medically determinable impairments were considered, the ALJ failed to mention at least one of the plaintiff's non-severe impairments at step four).

The Court's conclusion that it must vacate the ALJ's decision is not merely procedural. Ultimately, the ALJ's "omission" of any analysis about how two of Plaintiff's non-severe medical impairments were considered when determining Plaintiff's RFC "is not harmless, as Plaintiff's

15

physical impairments could affect [his] RFC, which could in turn affect which, if any, jobs exist that Plaintiff could perform." *K.P.*, 2021 WL 3130879, at *5.

Indeed, an ALJ's statement that they have analyzed all non-severe impairments, without more, is insufficient:

> a boilerplate statement . . . that the ensuing RFC assessment "reflects" the limitations determined at step two, with no further discussion of those limitations . . . is not the "valid explanation" required by Third Circuit case law or the "detailed assessment" required by SSR 96-8p. *See* [*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 213-14 (3d Cir. 2019)]; [*Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004)]; SSR 96-8p, 1996 WL 374184, at *5. It is inconsistent with regulations requiring the ALJ when formulating the RFC to "consider" *all* impairments, even non-severe ones, and at odds with the only circuit-level decision addressing the viability of such a statement. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); [*Wells v. Colvin*, 727 F.3d 1061, 1068-71 (10th Cir. 2013)].

*Gunn v. Kijakazi*, 705 F. Supp. 3d 315, 333 (E.D. Pa. 2023).

The ALJ's analysis gap is not confined to Plaintiff's physical impairments. The ALJ found Plaintiff's anxiety disorder severe and discussed the RFC's mental restriction around it. R. at 633, 636. But Plaintiff's documented mental impairments extend beyond anxiety, and the RFC fails to account for their full scope—or the side effects of the medications used to treat them. Four omissions illustrate this point.

In June 2021, Plaintiff's treating clinician and psychiatrist jointly diagnosed him with a "Mild Intellectual Disability." R. at 1622. The ALJ was aware of that diagnosis—the letter recording it is the very evidence he gave "little weight"—yet he never discussed Plaintiff's intellectual disability. R. at 642. The ALJ must consider every medically determinable impairment, severe or not, in assessing the RFC. *See* 20 C.F.R. § 416.945(a)(2); *K.P.*, 2021 WL 3130879, at *4. Merely pointing to reports by physicians who were aware of a condition does not discharge that duty. See *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (rejecting the position that an ALJ's "citation of reports by doctors who were aware of [the claimant's

impairment] sufficed," and remanding for want of any "discussion of the combined effect of [the] impairments").

The ALJ failed to consider Plaintiff's agoraphobia, which he was diagnosed with in 2016. R. at 467. According to the Record, because of his agoraphobia, Plaintiff does not leave his home, avoids public places, and suffers panic attacks "when he is outside among people." R. at 5, 468–71. The record also establishes that Plaintiff suffers from recurrent panic attacks, which have led to treatment in the emergency room. R. at 638. Indeed, Plaintiff testified that his panic attacks occur "at least once a month." R. at 657–77. Plaintiff reported—and the ALJ repeated—that his panic attacks "force him to leave work early or not go in at all." R. at 637. Plaintiff's panic attacks bear directly on how often Plaintiff would be off-task or absent—which factors into the ALJ's RFC analysis.

And finally, the ALJ failed to consider the side effects of Plaintiff's medications. Br. at 28. Plaintiff takes a substantial regimen of psychotropic medication, and the record documents that the regimen sedates him or makes him drowsy enough that he avoids taking them at work. R. at 682, 1225. The Third Circuit has refused to sustain an ALJ's "implicit rejection" of a claimant's testimony about "the effects of the medication he took" where the ALJ left unexplained whether that evidence "was not credited or simply ignored." *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983); *see Burns v. Barnhart*, 312 F.3d 113, 130 (3d Cir. 2002) (holding there was no error where, unlike here, "the ALJ specifically addressed this issue"). To be sure, the ALJ need not credit alleged side effects on Plaintiff's word alone. *See Rutherford v. Barnhart*, 399 F.3d 546, 555 (3d Cir. 2005). But Plaintiff's sedation is documented throughout his treatment records, not merely asserted, and the ALJ failed to analyze it.

17

The Court's decision not to remand on the step three errors while ordering remand on the step four error is not internally inconsistent. At step three, the ALJ performed an explicit analysis. He identified the applicable Listings, worked through the paragraph B criteria, and reached conclusions about Plaintiff's functional limitations in all four areas. Even if those conclusions were incomplete—he passed over the mood-swing evidence and selectively characterized Plaintiff's relationship with his mother—the analytical structure existed, and this Court could evaluate whether its gaps would have changed the result.

The step four error is different. There, the ALJ did not produce an incomplete analysis, but rather, no analysis at all. A single boilerplate sentence declaring that all non-severe impairments had been "considered" is not a finding. It is an assertion, and assertions cannot supply the foundation for judicial review. In other words, the problem is not that the ALJ reasoned poorly about Plaintiff's hyperlipidemia and hypothyroidism; the problem is that there is no reasoning to examine.

The Court must have "some indication of the evidence which was rejected" and the reasoning behind the ALJ's findings so that the Court can "properly exercise its responsibility" under § 405(g). *Cotter*, 642 F.2d at 704-05. An ALJ's bare conclusion unsupported by explanation is "beyond meaningful judicial review." *Burnett,* 220 F.3d at 119. That structural absence is itself the harm, and Plaintiff need not separately demonstrate that a fuller analysis would have altered the RFC. *See K.P.*, 2021 WL 3130879, at *5.

Accordingly, the Court will **GRANT** Plaintiff's appeal, **VACATE** the denial, and **REMAND** for further proceedings. [9] On remand, the ALJ should explicitly analyze and articulate

---

[9] Given the Court's decision to remand at step four, the Court does not need to reach Plaintiff's arguments at step five. *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 156–57 (3d Cir. 2008) ("Inasmuch as further development of the record and the ALJ's decision based on that record may make

whether and how all of Plaintiff's medical impairments (both severe and non-severe) potentially impact Plaintiff's RFC, and in turn, whether Plaintiff can perform any of the jobs identified by the vocational expert. In particular, the ALJ should address Plaintiff's diagnosed panic disorder, agoraphobia, and intellectual disability, along with the side effects of his medications.

### C.     The Court Will Not Remand for Benefits

Plaintiff asserts that the proper remedy is for the Court to remand solely to calculate and grant Plaintiff's "rightful benefits." Br. at 35. When considering whether to remand for further proceedings or solely for the ALJ to calculate benefits, the Court considers whether: (1) there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and (2) the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. *Bieri v. O'Malley*, No. 23-1919, 2024 WL 4680672, at *6 (M.D. Pa. Nov. 5, 2024) (citations omitted).

While the Court may "affirm, modify[,] *or* reverse the Commissioner's decision," 42 U.S.C. § 405(g), Third Circuit precedent directs that court-awarded benefits should be limited to circumstances where "the administrative record . . . has been fully developed and when substantial evidence as a whole indicates that the claimant is disabled and entitled to benefits." *Morales*, 225 F.3d at 320.

As explained in *Scott S.*, remanding for further proceedings is the proper procedure:

> Here, because the Court finds that the ALJ did not adequately consider Plaintiff's non-severe impairments during the RFC calculation, the proper remedy is to remand for further development of the record. *See Brandt*, 2023 WL 2578253, at *7. On remand, the ALJ is instructed to conduct additional investigations into, and provide explanations of, how if at all Plaintiff's non-severe impairments may affect the RFC calculation.

consideration of steps four and five of the five-step sequential evaluation procedure unnecessary, we do not reach [plaintiff's] other challenges to the ALJ's decision.")

2024 WL 3665803, at *6.

This Court agrees and remands the action to the ALJ to provide explanations for whether and how Plaintiff's non-severe medical impairments affect his RFC.

###### D.    The Court Denies Plaintiff's Request for a New ALJ

Although Plaintiff requests that the Court remand this matter to a "new Administrative Law Judge," Br. at 35, Plaintiff provides no evidence that the current ALJ is biased and that this case requires remand to a new ALJ.  Indeed, there is a "very high" threshold required "for finding an ALJ is biased." *Shanta B. v. Comm'r of Soc. Sec.*, No. 23-4232, 2024 WL 3534338, at *7 (D.N.J. July 25, 2024); *see Vail v. Colvin*, No. 13-966, 2014 WL 2615708, at *7-8 (D.N.J. June 12, 2014) (remanding to the same ALJ, even after plaintiff alleged the ALJ "made comments about the motives of poor claimants," because "the ALJ did not show bias against a specific party or demonstrate any interest in the outcome of the case").  Plaintiff provided only conclusory statements in his request for a new ALJ and failed to provide facts on *why* remanding to a new ALJ would be proper.  Br. at 29 & 34-35.  Without any specific demonstrations of improper bias, this Court denies Plaintiff's request to remand to a new ALJ.

#### IV.    CONCLUSION AND ORDER

For the reasons above,

**IT IS**, on this 26th day of June, 2026,

**ORDERED** that Plaintiff's appeal will be **GRANTED**; and it is further

**ORDERED** that the ALJ's denial of benefits will be **VACATED**; and it is further

**ORDERED** that Plaintiff's request to remand to a different ALJ is **DENIED**; and it is finally

**ORDERED** that the matter will be **REMANDED** to the SSA for further proceedings consistent with this Memorandum Order.

Evelyn Padin, U.S.D.J.